```
                DISTRICT COURT OF THE VIRGIN ISLANDS
                 DIVISION OF ST. THOMAS AND ST. JOHN

NATIVE SON, INC.,                       )
                                        )
        Plaintiff,                      )
                                        )
        v.                              )    Civil No. 2012-93
                                        )
OME SALES, LLC; DELTA EQUIPMENT         )
INTERNATIONAL SALES CORP.; OCEAN        )
MARINE ENGINES, LLC; DELTA PERFORMANCE  )
MARINE, LLC; and GREG H. SLAYTON,       )
                                        )
        Defendants.                     )
                                        )
```

**ATTORNEYS:**

**George M. Miller, Esq.**
George Marshall Miller, Esq. & Associates
St. Thomas, VI
   *For the plaintiff,*

**Greg H. Slayton**
Jacksonville, FL
   *Pro se defendant,*

**Delta Equipment International Sales Corp.**
**Ocean Marine Engines, LLC**
   *Unrepresented entities.*

                        **MEMORANDUM OPINION**

**GÓMEZ, J.**

   Before the Court is the motion of Native Son, Inc. ("Native Son") for default judgment.

                I.   **FACTUAL AND PROCEDURAL HISTORY**

   Delta Performance Marine ("Delta Performance") offered to sell Native Son three marine engines. The cost for each engine was $60,000. That offer was subject to the following terms. 50%

of the purchase price was to be deposited at the time of order. The balance was due at shipment. Delivery was due within four to six weeks after the receipt of the order. The terms of this agreement were sent in an email signed by Greg Slayton ("Slayton").

On or about August 10, 2012, Native Son ordered the three marine engines from Delta Performance. The contract price was $180,000 in total. Delta Performance responded indicating that the order had been received. Native Son and Delta Performance agreed that the order would be shipped within three weeks of final payment. The email memorializing the agreement came from "Sales@deltaperformancemarine.com" and was signed "Regards, Greg."

On August 13, 2012, Delta Performance sent an email to Native Son stating that it had been asked to expedite shipment on the three engines. Delta Performance asked when it could expect Native Son's bank to forward payment. For reasons that are unclear to the Court, Native Son was to wire payment for the engines to OME Sales, LLC ("OME Sales"). On August 14, 2012, Native Son wired $180,000 from its bank account at Banco Popular de Puerto Rico to OME Sales.

Thereafter, on August 20, 2012, Native Son sent an email to Delta Performance at "sales@deltaperformancemarine.com." Native

Son stated that it had not received any word from Slayton acknowledging payment. Native Son also indicated that it had not received any shipping details from Slayton or Delta Performance. Slayton responded via the Delta Performance email account on August 20, 2012. Slayton thanked Native Son for the order and payment. Slayton also acknowledged that the entire $180,000 owed for the three engines had been paid in full. Slayton's email stated that testing was being done on the engines, and that final painting would be done that week. The email also stated that Delta Performance would "be in touch with shipping info late this week."

On August 27, 2012, Native Son sent another email to Delta Performance. Native Son stated that it had learned from a third party that there was a delay with the preparation of the engines. Native Son asked Delta Performance to keep Native Son informed.

Native Son sent another email to Delta Performance on September 6, 2012. Native Son stated that it was checking the status of the engines. From a Delta Performance email account, Slayton responded on September 14, 2012. Slayton apologized for the delay. Slayton also stated that the engines were nearly ready to be shipped to Native Son.

OME Sales sent Native Son an invoice on September 14, 2012. That invoice indicated that Native Son had ordered three marine engines. It also indicated that the total price was $180,000. The invoice indicated that the funds had been received by wire transfer, and that Native Son had paid the amount in full. Finally, the invoice indicated that Slayton was the sales representative.

On September 19, 2012, Delta Performance sent an email to Native Son. That email said, "COMING OUT OF PAINT........THANKS GREG[.]"

Delta Performance sent an email to Native Son on September 27, 2012, stating "we are getting close to finishing up, sorry for the delay....We got several larger orders all at once...Thanks Greg[.]"

To date, Native Son has not received the purchased engines. Native Son has also not received a refund of the $180,000 purchase price.

Native Son filed this action on December 6, 2015. Count One is for breach of contract. Count Two was for fraud. Count Three is for restitution/unjust enrichment. That complaint named Slayton, Delta Performance, and Ocean Marine Engines, LLC ("OME") as defendants for all three counts.

Thereafter, on July 19, 2013, Native Son filed an amended complaint. The amended complaint named Slayton, Delta Performance, and OME as defendants. It also added OME Sales and Delta Equipment International Sales Corp. ("Delta Equipment") as defendants. Counts One, Two, and Three remained the same. The amended complaint alleged that all of the defendants were guilty of all three counts.

On September 19, 2014, summary judgment was entered for Native Son against OME Sales. Count Two, fraud, was dismissed with prejudice against all defendants.

On January 15, 2015, Native Son filed a motion for entry of default by the Clerk of the Court against Slayton, OME, and Delta Performance. On April 24, 2015, the Clerk of the Court made an Entry of Default as to Delta Performance Marine, Slayton, and OME.

On April 24, 2015, a motion for default judgment against Slayton, Ocean Marine, Delta Equipment, and Delta Performance was filed.[1] On that same day, it also filed a waiver of certain damages. Native Son waived any remedies in excess of the $180,000 purchase price of the engines.

---

[1] On June 8, 2015, Native Son voluntarily dismissed its claims against Delta Performance.

On September 14, 2015, Native Son filed a notice of the service of written discovery. The discovery sought was for admissions by Slayton. On October 15, 2015, Native Son filed the list of admissions. The admissions had been submitted to Slayton. Slayton had not answered them.

On December 14, 2015, an evidentiary hearing was held to hear any additional evidence not already in the record. The Court noted some potential complications with the claims against OME and Delta Equipment. Native Son waived all claims against OME and Delta Equipment.

## II. DISCUSSION

Federal Rule of Civil Procedure 55 allows for a default judgment if three requirements are satisfied: (1)the amount in controversy is for a sum certain that can be readily computed, (2) the defendant must be in default for not appearing before the court, (3) the defendant cannot be an infant or mentally incompetent. The soldiers and Sailors Act further requires that it be established that the defendant is not a member of the armed forces. *See* 50 App. U.S.C. § 521(b)(1). If a defendant is not properly served, then a default judgment cannot be issued. *See, e.g.*, *Grand Entertainment Group, Ltd. v. Star Media Sales, Inc.*, 988 F.2d 476, 492-93 (3d Cir. 1993)(dismissing a default judgment for failure to properly serve the defendants).

### III. <u>ANALYSIS</u>

In order for Native Son to establish it is entitled to a default judgment against Slayton, it must first establish that it has satisfied each of the Rule 55 requirements for a default judgment. *See* Fed. R. Civ. P. 55. If Native Son succeeds in establishing it has satisfied the basic Rule 55 requirements for a default judgment, it must then establish that it has satisfied all of the elements for the underlying breach of contract and restitution claims.

**1. Rule 55 Requirements for a Default Judgment**

**A. Sum Certain**

The first requirement is that Native Son must only seek a sum certain that can be readily computed. *See* Fed. R. Civ. P 55; *United States v. Mulvenna*, 367 Fed App'x 348, 350 (3d Cir. 2010)(holding that when a plaintiff's claim is for a specific dollar amount, the requirement of a sum certain has been met). Here, the damages sought have been limited to $180,000, the cost of the three engines. *See Notice of Waiver of Certain Damages*, Dkt. 95. Native Son does not seek any damages that are not readily determinable.

**B. Entry of Default**

The second requirement is that the defendant must be in default. *See Husain v. Casino Control Com'n,* 265 Fed. App'x.

130, 133 (3d Cir. 2008).  Here, default was entered by the Clerk of Court as to Slayton on April 4, 2015. *See Clerk's Entry of Default as to Greg H. Slayton*, Dkt. 87.

**C. Competent Adults who are not Members of the Armed Forces**

The third requirement for a default judgment is that the person cannot be a minor, incompetent, or a member of the armed forces. *See* Fed. R. Civ. P. 55(b)(2); 50 App. U.S.C. § 521(b)(1).  Here, Native Son has provided an affidavit establishing that Slayton is neither a minor nor mentally incompetent. *See Amended Motion for Default Judgment*, Dkt. 96. Native Son has also provided an affidavit establishing that Slayton is not a member of the armed forces. *See Motion for Entry of Default*, Dkt. 78.

**D. Valid Service**

The fourth requirement is that a defendant must have been properly served.  Process may be served by "delivering a copy of the summons and of the complaint to the individual personally; . . . leaving a copy of each at the individual's dwelling or usual place of abode with someone of suitable age and discretion who resides there; or . . . delivering a copy of each to an agent authorized by appointment or by law to receive service of process." Fed. R. Civ. P. 4.  On December 3, 2014, a summons for

Slayton was returned executed. *See Summons Returned Executed*, Dkt. 76.  Slayton was personally served. *See id.*

Native Son has satisfied all of the Rule 55 requirements for a default judgment against Slayton.  Before Native Son is entitled to default judgment, the Court must determine whether Native Son is entitled to relief on the underlying merits of the breach of contract or restitution claims.

2. **Merits**

Native Son has two remaining claims against Slayton.  Count One of the complaint alleges breach of contract against Slayton.  Count Three seeks restitution from Slayton.  The Court will address each claim in turn.

**A. Count One: Breach of Contract**

In the Virgin Islands, there are four elements to a claim for breach of contract: "(1) an agreement, (2) a duty created by that agreement, (3) a breach of that duty, and (4) damages." *Bank of Nova Scotia v. Ross*, Civ. No. 2010-118, 2012 WL 4854776 (D.V.I. Oct. 12, 2012)(slip op.)(citing to *Arlington Funding Services, Inc. v. Geigel*, 51 V.I. 118, 135 (V.I. 2009)).  An agreement may be either express, one which is stated in oral or written words, or implied wholly or partially from the parties' conduct. *See* Restatement (Second) of Contracts § 4; *Delta Elec. v. Biggs*, 2011 WL 4463211, *3 (D.V.I. App. Div. 2011).  "A party

who breaches a contract is liable for all natural and probable consequences of the breach of that contract." *Mendez v. Coastal Sys. Dev., Inc.*, 2008 WL 2149373, *12 (D.V.I. 2008).

Slayton is a corporate officer of OME, OME Sales, Delta Performance, and Delta Equipment. An order through Delta Performance for three engines resulted in Native Son's communication with Slayton. Native Son sent $180,000 to OME Sales to consummate the sale of the engines. In order for a party to be liable for a breach of contract, that party must have been a party to the agreement at issue. *See Ross*, Civ. No. 2010-118, 2012 WL 4854776. "Whenever a corporation makes a contract, it is the contract of the legal entity—of the artificial being created by the charter—and not the contract of the individual members." *Walsh v. Alarm Sec. Grp., Inc.*, 95 F. App'x 399, 402 (3d Cir. 2004)(internal citations and quotations omitted).

If Slayton is to be held liable for the failure to deliver the three engines, Native Son will need to pierce the corporate veil. "The 'classical' piercing of the corporate veil is an equitable remedy whereby a court disregards the existence of the corporation to make the corporation's individual principals and their personal assets liable for the debts of the corporation." *Id.* (internal quotation omitted).

*Native Son, Inc. v. Slayton*
Civil No. 12-cv-93
Order
Page 11

> [I]n determining whether to "pierce the corporate veil," [the Third Circuit] considered the following factors: gross undercapitalization, failure to observe corporate formalities, nonpayment of dividends, insolvency of debtor corporation, siphoning of funds from the debtor corporation by the dominant stockholder, nonfunctioning of officers and directors, absence of corporate records, and whether the corporation is merely a facade for the operations of the dominant stockholder.

*Id.* at 194. "[A]lter ego ... must be shown by clear and convincing evidence." *Id.*

On September 14, 2015, Native Son served Slayton with a request for admissions. That request for admissions included several statements relevant to an attempt to pierce the corporate veil. Request for admission number eight states: "Ocean Marine Engines, LLC, OME Sales, LLC, and Delta Equipment International Sales never held any annual meetings." *Motion for Discovery to Deem Request for Admissions Admitted*, Dkt. 106. Request for admission number eleven states: "Ocean Marine Engines, LLC, OME Sales, LLC, and Delta Equipment International Sales Corporation never carried a capital balances that were sufficient to cover their debts." *Id.* Request for admission number seventeen states: "You have never maintained any formal or legal separation between your personal financial affairs and the business of Ocean Marine Engines, LLC, OME Sales, LLC, and

Delta Equipment International Sales Corporation." *Id.* More than 30 days have passed since Native Son served Slayton with the request for admissions. Slayton never responded.

Federal Rule of Civil Procedure 36(a)(3) provides:

> *Time to Respond; Effect of Not Responding.* A matter is admitted unless, within 30 days after being served, the party to whom the request is directed serves on the requesting party a written answer or objection addressed to the matter and signed by the party or its attorney. A shorter or longer time for responding may be stipulated to under Rule 29 or be ordered by the court.

Due to Slayton's failure to respond to the request for admissions, this Court shall treat those statements as admitted. *See* Fed. R. Civ. P. 36(a)(3).

These admissions establish gross undercapitalization, failure to observe corporate formalities, insolvency of the debtor corporation, siphoning of funds, and the absence of corporate records. *See Walsh*, 95 F. App'x at 402. They establish for the Court that OME, OME Sales, Delta Performance, and Delta Equipment were "merely a façade for the operations of the dominant stockholder." *See id.*

This court has already granted summary judgment against OME Sales for breach of contract. The record establishes that Native Son is entitled to pierce the corporate veil as to OME

*Native Son, Inc. v. Slayton*
Civil No. 12-cv-93
Order
Page 13

Sales to hold Slayton personally liable for this breach of contract.[2] *See Trustees of Nat. Elevator Indus. Pension v. Lutyk*, 332 F.3d 188, 191, 199 (3d Cir. 2003)(piercing the corporate veil of a corporation that had been found liable because the owner had siphoned funds and failed to perform corporate formalities).

**B. Count Three: Restitution**

There are three elements to a claim for restitution, or "quasi-contract," in the Virgin Islands: "(1) a party must confer benefits on another party; (2) there must be an appreciation of the benefits by the recipient; and (3) there must be an acceptance and retention of these benefits in such circumstances that it would be inequitable for the recipient to retain the benefits without payment of value." *Terrace v. Williams*, 52 V.I. 225, 2009 WL 2043870, at *11 (V.I. 2009). Restitution is not available when an adequate remedy at law is available. *Cf.* RESTATEMENT (FIRST) OF RESTITUTION § 160 cmt. f (1937) (explaining that when an adequate remedy at law is available, then the equitable remedy for unjust enrichment is unavailable); *see also National Sec. Systems, Inc. v. IOLA*, 700 F.3d 65, 101

---

[2] One of Slayton's admissions states that the contracts were entered into in both his personal and professional capacities. Even though the Court finds the veil piercing analysis more persuasive, it is also possible to establish the same result from a direct contractual link to Slayton established in the September 14, 2015, set of admissions.

(3d Cir. 2012)(citing to the RESTATEMENT (FIRST) OF RESTITUTION as persuasive authority for when a party can use a restitution theory of reimbursement).

Here, Native Son has an adequate remedy at law. Indeed, Native Son has prevailed on its breach of contract claim. As such, a claim of restitution is unavailable to Native Son.

### 3. Discretion of the Court to Enter Default

Even if the basic statutory requirements for a default judgment have been met, the Court must still address whether it should grant the default judgment. *See Chamberlain v. Giampapa*, 210 F.3d 154, 164 (3d Cir. 2000). "Three factors control whether a default judgment should be granted: (1) prejudice to the plaintiff if default is denied, (2) whether the defendant appears to have a litigable defense, and (3) whether defendant's delay is due to culpable conduct." *Id.*

As to the first factor, if default judgment is denied, then Native Son will not have other viable options to pursue its claim against Slayton. Slayton is not participating in this case. If the Court were to deny a default judgment, then Native Son would have to bring its claim in another Court and all indicia show that the defendants would still not participate in that suit either. Forcing Native Son to continue this cycle would be prejudicial.

The litigable defenses for Slayton have been previously addressed. Slayton does not have any litigable defenses.

Slayton has failed to participate in this judicial proceeding. He has not presented to this Court any reason to justify his inactivity. It appears the inactivity is merely the fault of the defendant and his lack of a desire to participate in the judicial process. These factors convince the Court that a default judgment is warranted.

An appropriate judgment shall be entered by the Court.